UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DORA AJA, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:19-cv-12442-IT |
| | * |
| SELECT PORTFOLIO SERVICING, | * |
| INC. and WELLS FARGO BANK N.A., | * |
| as trustee for the certificateholders of | * |
| Carrington Mortgage Loan Trust, Series | * |
| 2007-FRE1 Asset-Backed Pass-Through | * |
| Certificates | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

November 25, 2020

TALWANI, D.J.

Plaintiff Dora Aja brought this action in Suffolk Superior Court against Select Portfolio Servicing, Inc. ("SPS") and Wells Fargo Bank ("Wells Fargo"). She alleges that Defendants' efforts to enforce the mortgage on her property are predatory because they knew at the inception of the loan that she would never be able to repay it. Am. Compl. ¶ 1 [#10]. The Amended Complaint [#10] asserts three claims: (1) unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A ("chapter 93A"); (2) unfair debt collection practices in violation of ch. 93, § 49; and (3) laches. Defendants removed the case to federal court, Notice of Removal [#1], and now move to dismiss the Amended Complaint [#10] in its entirety for failure to state a claim, Mot. to Dismiss 2 [#15]. For the following reasons, Defendants' Motion to Dismiss the Amended Complaint [#15] is ALLOWED.

I.  **Factual Background as Alleged in the Amended Complaint**

On March 15, 2006, Plaintiff, a realtor by profession, purchased a three-family property in Boston, Massachusetts for $560,000. Am. Compl. ¶¶ 5-7 [#10]. She refinanced her mortgage on December 13, 2006, with two loans issued by Fremont Investment & Loan ("Fremont"). Id. at ¶ 10. The first loan, which is the subject of this dispute, was for $600,000 with an initial interest rate of 8.3 percent. Id. at ¶ 12. Plaintiff alleges several irregularities in the formation of the mortgage contract, such as that her "income, net worth and property value were all fraudulently inflated by the mortgage broker in order to refinance her existing mortgage" and that "[t]he loans were underwritten without any financial documentation or income verification, and . . . the monthly mortgage obligation from the outset was more than 50% of [her] gross monthly income in 2006." Id. at ¶¶ 1, 15. She claims that, as a result, the "mortgage was doomed to foreclosure at the outset." Id. at ¶ 1.

In early 2007, the Federal Deposit Insurance Corporation ("FDIC") brought charges against Fremont for "unsafe and unsound" banking practices related to its subprime lending business. Id. at ¶¶ 16-17. See Commonwealth v. Fremont Inv. & Loan, 452 Mass. 733, 744 (2008). These charges led Fremont to enter into a consent agreement with the FDIC on March 7, 2007, in which Fremont agreed to "cease and desist" from originating adjustable-rate mortgage loans containing terms like those in the loan issued to Plaintiff.  Am. Compl. ¶ 17 [#10]. In October 2007, the Massachusetts Attorney General filed a consumer protection enforcement action to enjoin Fremont from foreclosing on any Massachusetts residential mortgage loan. Id. at ¶ 18. The Attorney General then filed a motion for a preliminary injunction prohibiting Fremont from foreclosing on owner-occupied properties without first obtaining court approval. Id. at ¶ 19; Fremont Inv. & Loan, 452 Mass. at 752. A Superior Court judge granted the preliminary

injunction, restricting Fremont's ability to foreclose on loans with features that were "presumptively unfair," Commonwealth v. Fremont Inv. & Loan, No. CIV.A. 07-4373-BLS1, 2008 WL 517279, at *15 (Mass. Super. Feb. 26, 2008), and the Massachusetts Supreme Judicial Court affirmed, Fremont Inv. & Loan, 452 Mass. at 735. Plaintiff alleges that her loan contained all of the characteristics enumerated by the court as rendering a loan "presumptively unfair." Am. Compl. ¶¶ 19-20 [#10].

Plaintiff's income sharply decreased as a result of the 2008 financial crisis, and she defaulted on her loan. Id. at ¶ 23. The mortgage was assigned to Wells Fargo on May 28, 2009, id. at ¶ 22, and Wells Fargo initiated foreclosure proceedings in June 2009, Objection to Proof of Claim 2 [#10-3]. To stave off the foreclosure, Plaintiff filed a Chapter 11 bankruptcy petition in December 2009, which the bankruptcy court converted to a Chapter 7 petition. Id. at 3. Wells Fargo filed a motion for relief from the automatic stay,[1] which the bankruptcy court granted over Plaintiff's objections in February 2010. Am. Compl. ¶¶ 26-28 [#10]. The Chapter 7 trustee "abandoned" the property back to the plaintiff for lack of equity[2] and Plaintiff filed an objection to Wells Fargo's Proof of Claim. Objection to Proof of Claim 1-4 [#10-3]. The bankruptcy court rejected that objection, noting inter alia that Wells Fargo had been granted relief from the automatic stay and Plaintiff was free to raise any and all defenses in state court. Bankruptcy

---

[1] Immediately after a bankruptcy petition is filed, an "automatic stay" is imposed against certain creditors, suspending collection activities, including foreclosure. See 11 U.S.C. § 362.

[2] When a debtor seeks relief under Chapter 7, all property of the debtor becomes property of the bankruptcy estate and is subject to disposition by the Chapter 7 trustee, with court approval. 11 U.S.C. §§ 701, 704. If the Chapter 7 trustee determines that these is no equity in a mortgaged property, the trustee may abandon the property, and title then reverts to the debtor. 11 U.S.C. § 554.

Court Docket, ECF No. 207 [#16-1]. Plaintiff received a discharge, releasing her from personal liability for the loan, on May 10, 2011. Bankruptcy Court Docket 1 [#16-1].

At some point, servicing of Plaintiff's loan was transferred to Chase Mortgage ("Chase"). Id. at ¶ 30. Plaintiff submitted a loan modification application in 2013, but Chase did not grant it. Id. at ¶¶ 30, 32. In 2018, Plaintiff submitted another loan modification application to SPS, the current servicer of her loan. Id. at ¶¶ 34, 36. SPS denied the Plaintiff's application because she lacked sufficient income. Id. at ¶ 36. Wells Fargo thereafter served her with a notice of foreclosure. Id. at ¶ 33.

In August 2019, Plaintiff contacted the Massachusetts Division of Banks ("DOB") for assistance in stopping the scheduled foreclosure. Id. at ¶ 37. SPS agreed to postpone the sale to allow Plaintiff time to submit another application for loan modification. Id. at ¶ 38. However, when Plaintiff spoke with an SPS representative, she was told that the loan modification would not be considered because the amount owed on the property exceeded its value. Id. at ¶ 39. SPS notified the DOB of its decision not to modify Plaintiff's loan on October 22, 2019. Id. at ¶ 40. A foreclosure sale was scheduled for November 18, 2019, id. at ¶ 43, but it was stopped when Plaintiff filed suit on November 14, 2019 and obtained a preliminary injunction from the state court prior to removal, State Court Compl. [#1-1]; Preliminary Injunction [#1-3].

## II.    Discussion

### A.    *Standard of Review*

In evaluating a motion to dismiss, this court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). In ruling on a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)) (alteration in original).

  B. *Unfair and Deceptive Practices*

Plaintiff's first claim is that "Defendants committed unfair and deceptive practices by enforcing a mortgage, the terms of which are unlawful," in violation of chapter 93A. Am. Compl. ¶ 47. But Defendants argue, and the court agrees, that Plaintiff's claim is time-barred.

Causes of action under chapter 93A are subject to a four-year statute of limitations. Mass. Gen. Laws ch. 260, § 5A. Plaintiff signed the mortgage contract at issue on December 13, 2006, and her Amended Complaint [#10] alleges that date as the start of her injury. Am. Compl. ¶ 1 [#10] ("The mortgage was doomed to foreclosure at the outset" and "was issued in violation of established principles of fairness"). The statute of limitations therefore ran on December 13, 2010, almost nine years before Plaintiff initiated this action.

Plaintiff counters that each of Defendants' ongoing debt collection attempts triggered a new limitations period and that her action is therefore preserved. Pl's Opp. 10-11 [#19]. The law in this circuit runs contrary, however: in O'Brien v. Deutsche Bank Nat'l Tr. Co., 948 F.3d 31, 36 (1st Cir. 2020), the First Circuit rejected this theory of ongoing chapter 93A liability, holding that the defendant's collection attempts did not cause the kind of "'identifiable harm' separate from that caused by the underlying unfair loan" required to give rise to a new claim.

Plaintiff argues that this case is distinguishable from O'Brien for two reasons. First, in addition to sending monthly billing statements, Defendants accelerated her loan and initiated foreclosure, and second, although her personal obligations under the mortgage were discharged, she remains liable for repairs and maintenance on the property. Pl's Opp. 11 [#19]. But as in O'Brien, the crux of Plaintiff's chapter 93A claim is "that the loan was predatory because it was unaffordable from the *outset*." O'Brien v. Select Portfolio Servicing, Inc., No. CV 18-12148-RGS, 2019 WL 267475, at *3 (D. Mass. Jan. 18, 2019) (emphasis original). It is not enough for Plaintiff to allege that Defendants accelerated the loan or foreclosed on her property; she must demonstrate that these actions were independently unfair or deceptive, such that they constitute "identifiable harms" that are separate from the original violation. See Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 281 (1st Cir. 2013) (quoting Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998)) ("Something more is required for [a plaintiff] to establish that the [foreclosure] 'has an extortionate quality that gives it the rancid flavors of unfairness and

6

deceptiveness'") (internal alterations and quotation marks omitted). Similarly, she must show that the damages she sustained from repairing and maintaining the property were caused by Defendants' unlawful conduct. See Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 503 (2011) ("To warrant an award of damages under [chapter] 93A, there must be a causal connection between the [defendant's] deceptive act and the [plaintiff's] injury or loss"). Because Plaintiff's cause of action arises out of the origination of her mortgage with Fremont, her claim is untimely.

At oral argument, Plaintiff raised the additional argument that Defendants committed unfair and deceptive practices by refusing to review her application for a loan modification when her income became sufficient to afford a modified loan. Plaintiff has not provided the court with any authority for the proposition that she has a right to a modification, however. She does not argue that a contractual provision entitles her to a loan modification, nor has she pleaded that any state or federal law gives her a statutory right to seek a modification. The court therefore finds that denying Plaintiff a loan modification on the facts alleged here does not constitute an unfair and deceptive practice that could be the basis for a chapter 93A claim.

    C.    *Unfair Debt Collection Practices*

Plaintiff's next claim is that Defendants violated Mass. Gen. Laws ch. 93, § 49, by collecting or attempting to collect her mortgage "in an unfair, deceptive, and unreasonable manner." Am. Compl. ¶ 55 [#10]. This claim is similarly time-barred due to the four-year statute of limitations. See Mass. Gen. Laws ch. 260, § 5A. As above, Plaintiff's allegations are based on

Defendants' ongoing efforts to enforce a mortgage loan that she claims was "doomed to fail" at origination. Am. Compl. ¶ 55 [#10]. Plaintiff does not allege any facts supporting her claim that Defendants collected or attempted to collect the debt "in an unfair, deceptive or unreasonable manner," Mass. Gen. Laws ch. 93, § 49, and therefore "does not show that any alleged collection action that occurred [within the last four years], gave rise to a new claim," O'Brien, 948 F.3d at 36.

  D. *Laches*

Plaintiff's final claim is that the doctrine of laches bars the foreclosure. Am. Compl. ¶¶ 57-61 [#10]. She alleges that her mortgage went into default in August 2007, that Defendants have failed to foreclose, and that "this unreasonable delay has caused her damages, including living under conditions of uncertainty as to the status of the property, and investing more than $100,000 into maintenance and repairs of the property." Am. Compl. ¶¶ 59-60 [#10].

Laches is inapplicable in this context, however. Laches is an "equitable defense" that "bar[s] a party from asserting a claim if the party so unreasonably delayed in bringing the claim that it caused some injury or prejudice to the [other party]." Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 759–60 (1993). But in Massachusetts, the obsolete mortgage statute, Mass. Gen. Laws ch. 260, § 33, deems a mortgage unenforceable either (1) thirty-five years from the date of recording if no mortgage term is stated or (2) five years from the expiration of the mortgage term or maturity date stated in the mortgage, if there has not been a recorded extension of the mortgage in either circumstance. In effect, the obsolete mortgage statute functions as a statute of limitations on foreclosures. See Deutsche Bank Nat. Tr. Co. v. Fitchburg Capital, LLC, 471 Mass. 248, 251 (2015). In this case, where the maturity date of Plaintiff's mortgage is January 1, 2037, Mortgage 2 [#10-1], it is enforceable until January 1, 2042, and Defendants'

attempt to foreclose falls well within the limitations period. Plaintiff therefore fails to state a claim for laches.

### III. Conclusion

For the forgoing reasons, Defendants' <u>Motion to Dismiss the Amended Complaint</u> [#15] is ALLOWED.

IT IS SO ORDERED.

November 25, 2020 /s/ Indira Talwani
United States District Judge